HUDMON v. FOSTER et al. (No. 5970.)

(Court of Civil Appeals of Texas. Austin. Nov. 13, 1918. On Motion for Rehearing, Feb. 5, 1919. Further Rehearing Denied March 19, 1919.)

1. PLEADING ☞64(1)—MULTIFARIOUSNESS— DISCRETION OF COURT.

Whether or not a petition is multifarious is largely for the discretion of the court.

2. USURY ☞16—NATURE AND CHARACTER— INTENT.

If the amount paid by the borrower to the lender in excess of legal interest was intended as compensation for the use of money loaned, it is usury, regardless of what manner or form or under what pretense cloaked.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Usury.]

3. USURY ☞119—NATURE OF CONTRACT— QUESTIONS OF FACT.

Where a contract is not usurious on its face, whether or not it is in fact usurious is a question for the jury.

On Motion for Rehearing.

4. APPEAL AND ERROR ☞1008(1)—REVIEW— AFFIRMANCE.

In the absence of material error in the conduct of a case, an appellate court should affirm the judgment of the trial court, if it can do so upon any theory presented by the pleadings and sustained by the evidence.

5. APPEAL AND ERROR ☞1008(1)—REVIEW— QUESTIONS OF FACT—FINDINGS OF COURT.

The finding of a court trying a case without a jury is entitled to the same weight as the finding of a jury.

6. USURY ☞57—ENFORCEMENT OF CONTRACTS —COMPENSATION FOR OBTAINING MONEY.

Where one party to a written contract agreed to give $5,000 in stock of a corporation to be organized by him, for services to be rendered by the other party in finding some person who would make him a loan of $17,500, or a part thereof, and, if part, then to advance the remainder, such contract will be enforced as against a claim of usury; no fraud, accident, or mistake being alleged.

7. USURY ☞57 — NATURE AND ELEMENTS — COMMISSIONS.

Where defendants did not loan or advance to the borrower any money but secured other parties to do so, the amount paid them was not for the use or detention of money belonging to them, and was therefore not interest, so as to be usurious.

8. USURY ☞142(4)—ACTIONS TO RECOVER PENALTIES—EVIDENCE—SUFFICIENCY.

In an action to recover statutory penalties for extorting usurious interest, under a contract whereby defendants were to obtain $5,000 worth of stock for themselves for providing, or finding others willing to provide, a loan of $17,500, evidence held to support a finding that the contract was not usurious.

Appeal from District Court, McLennan County; Geo. N. Denton, Judge.

Action by W. Earle Hudmon against W. M. Foster and others. Judgment for defendants, and plaintiff appeals. Affirmed.

H. C. Lindsey, of Waco, for appellant.
Allan D. Sanford, of Waco, for appellees.

Findings of Fact.

JENKINS, J. Prior to 1911, the appellant and his brother owned and operated a cotton seed oil mill in the town of Hamilton, Tex. The enterprise was not successful, and the mill had been sold out under deed of trust, and bought in by the creditors, who were the bank at Hamilton and the Van Winkle Machine Company. The title was in J. T. James, president of the Hamilton Bank, and R. E. L. Knight, as trustees for the owners. They offered to reconvey the property to appellant for the sum of $17,500. Appellant applied to Early & Foster for a loan of this amount. Mr. Foster, with whom he transacted the business, stated to him that they did not have the money, but might be able to get it for him. With this end in view, appellant went with Foster to Galveston; but Foster failed to make satisfactory arrangements for the money. On their return trip, Foster spoke to Mr. H. H. Shear, of Waco, with reference to the matter. Soon afterwards Mr. Shear sent his business associate,

Mr. Rowe, over to Hamilton to examine the property. Appellant came to Waco in a few days, and talked with Mr. Shear about the matter, telling him what he had in view, but did not try to borrow money from him. Appellant's plan for obtaining the $17,500 was this: There was another oil mill at Hamilton, and the business men and farmers there desired that appellant's mill should be operated also, in order to create competition. Appellant had secured subscriptions from various parties in and around Hamilton for capital stock to the amount of $30,000 in a corporation to be organized to take over the mill theretofore operated by appellant and his brother. The capital stock of the proposed corporation was to be $60,000, of which appellant was to take $35,000. This was all explained to Mr. Foster. Foster proposed to appellant that he would loan him a part of the money, and undertake to secure the remainder for him, and, if he succeeded, he was to receive $5,000 paid-up stock in the proposed corporation. .

When these matters were first discussed between appellant and Foster, Foster consulted Mr. Carrington, an attorney, to know if he could make such a contract in a way to avoid usury, and Mr. Carrington informed him that he could not. The following contract was subsequently drawn up and signed by the parties:

"The State of Texas, County of McLennan.

"This contract, entered into on this the 6th day of August, A. D. 1911, by and between Eugene Early and W. M. Foster, hereinafter called Early & Foster, of McLennan county, Texas, of the one part, and W. Earle Hudmon, hereinafter called Hudmon of Hamilton county, Texas, of the other part, witnesseth:

"(1) That Hudmon is in need of cash money with which to meet immediate pressing demands upon him, and to secure the said cash money desires to negotiate a loan; that the amount of cash money absolutely required by Hudmon is $17,500.00; that Hudmon has applied to Early & Foster to make him a loan of the said amount; that Early & Foster have not themselves the cash money necessary to make the said loan, but have a part thereof, which they are willing to place in such loan as part thereof, if properly secured, and are willing to attempt to find some person or persons who will advance the balance necessary above what Early & Foster can furnish to make said loan of $17,500.00; that Early & Foster, at the request of Hudmon, agree to try to find such other person or persons; that in the event they are able to find such other person or persons, and succeed in making the said loan of $17,500.00 by themselves and such other person or persons to Hudmon, then Hudmon shall, as compensation to Early & Foster for finding such other person or persons and inducing them to aid in making the said loan, transfer, assign, and deliver, or cause to be so done, capital stock of a corporation to be hereafter formed, with its domicile at Hamilton, Texas, to be named Hudmon Cotton Oil Company, and its purpose being the manufacture of cotton seed products, to the amount of

$5,000.00 par value, said stock to be fully paid up and nonassessable; that the said loan shall be evidenced by the three promissory notes of Hudmon, payable to the order of Early & Foster, to be held by them for the benefit of themselves and said other person or persons, bearing 10 per cent. interest from date, to bear the date when the money on the said loan is actually advanced to Hudmon, payable at Waco, Texas, providing that failure to pay any one of said notes shall at the option of the holder or holders of them or either of them mature all of them, and with the usual 10 per cent. attorney's fee clause, one of said notes for the sum of $4,500.00, due May 1, 1912, one for the sum of $500.00, due May 1, 1912, and the other for the sum of $12,500.00, due May 1, 1913; that contemporaneously with the execution of the said notes Hudmon shall, for the purpose of securing the payment of the same, hypothecate and deposit with and to Early & Foster shares of stock in the said corporation, evidenced by proper certificates, to the amount of $30,000.00, and shall execute and deliver to Early & Foster an hypothecation contract providing in effect that, upon failure to pay the said notes or either of them when due, Early & Foster shall have the authority to sell the said stock, either at public or private sale, after giving Hudmon ten days' notice in writing by letter addressed to Hudmon at his then address, if known to Early & Foster, and if his then address be not known to them, to his post office address last known to them, and ·deposited in the United States mail, said hypothecation contract to be in such form as to create a lien in favor of Early & Foster upon the said stock to secure the said loan and to give authority to foreclose to the effect as above stated; that it is contemplated between the parties that the said corporation will be formed and the said loan negotiated and all of the other things named herein done and performed within about fifteen days from this date, and in less than fifteen days if possible.

"Witness the hands of the parties in duplicate, both of which are hereby declared to be originals, the day and date first above written.

"Eugene Early.
"W. M. Foster.
"W. Earle Hudmon.

"Witness: Allan D. Sanford."

The following letter and reply thereto were read in evidence:

"September· 2, 1911.

"Mr. W. Earle Hudmon, Hamilton, Texas— Dear Sir: Referring to securing $17,500.00 loan ror you, we find that we can do so for $5,-000.00 paid-up stock in the Hudmon Cotton Oil Company; this stock to be delivered to us made out in our name. This to be done when the $17,500 is paid.

"You understand we have no money to lend, and only act as agent in securing this money for you.

"Yours very respectfully,
"Early-Foster Company,
"WMF:LW          Per W. M. Foster."

·"Early-Foster Company, Waco, Texas — Gentlemen: Referring to the above letter and the proposed arrangement as to securing $17,-500.00 loan for us, such arrangement is satisfac-

<m

tory, and when the $17,500.00 is paid to us we will deliver to you the $5,000.00 paid-up stock in the above-named oil company.

"Yours respectfully,    W. Earle Hudmon."

This letter was written in the office of Early-Foster Company, in the presence of appellant, and handed to appellant, and appellant dictated the reply in the presence of Mr. Foster.

Foster made a contract with Mr. Shear to sell him two notes, one for $12,500, and one for $5,000, executed by appellant in accordance with said contract, and secured by $20,000 of the stock of the Hudmon Cotton Oil Company of Hamilton, Tex., a corporation which had been organized in accordance with the agreement between appellant and Mr. Foster, for which Shear paid Foster $10,000. Appellant executed his note for $4,500, which, together with the $10,000 of the corporate stock of the Hudmon Cotton Oil Company, was delivered to Foster. With this note and collateral, and other collaterals furnished by Foster and Early, they obtained in Galveston $7,500. The $10,000 obtained from Shear and the $7,500 obtained in Galveston, under agreement with appellant, was paid to Mr. Chesley, upon the order of James and Knight, trustees, who executed the deed to appellant in accordance with the agreement as above referred to.

Subsequently the property of the Hudmon Cotton Oil Company was sold, and appellant paid his notes in full, with 10 per cent. interest thereon. The stock of the Hudmon Cotton Oil Company, which was given to Early-Foster Company, was worth $5,000 at the time it was delivered to them. This suit was brought to recover double the sum of $5,000 and the 10 per cent. interest paid on said notes, all of which appellant alleged was usurious interest on the money loaned him.

Appellees' contention was that the $5,000 stock in the Hudmon Cotton Oil Company was paid them for their services in securing the loan for appellant. The case was tried before the court without a jury, and judgment was rendered for appellees.

### Opinion.

In addition to the facts above stated, this suit was instituted to recover $2,500, alleged to have been paid by appellant to appellees under duress at the time the mill at Hamilton was sold.

[1] Appellees excepted to appellant's petition as being multifarious, and the court sustained the exception. Appellant has assigned this action of the court as error. The question of multifariousness in a petition is one largely for the discretion of the court.

If it be conceded that appellees' exception should not have been sustained, we do not think appellant shows such injury thereby as would call for reversal of this case, if the judgment of the court should be sustained on the issue that was tried, namely, the question of usury. Clegg v. Varnell, 18 Tex. 304.

[2] The law as applicable to the facts of this case may be briefly stated as follows:

If the amount paid by the borrower to the lender in excess of the legal interest was as compensation for the use of the money loaned, it is usury, whatever may be the guise under which the transaction is clothed. In such case "the court should penetrate beneath the lawful appearance, and reach the unlawful transaction." Lawrence v. Griffen, 30 Tex. 401.

"It is quite immaterial in what manner or form, or under what pretense it is cloaked, if the intention was to reserve a greater rate of interest than the law allows for the use of money, it will vitiate the contract with the taint of usury." Mitchell v. Napier, 22 Tex. 129; Building & Loan Ass'n v. Robinson, 78 Tex. 169, 14 S. W. 227, 9 L. R. A. 292, 22 Am. St. Rep. 36.

On the other hand, a bona fide charge by the lender in connection with the loan will not render it usurious. Bomar v. Smith, 195 S. W. 965; Huddleston v. Kempner, 1 Tex. Civ. App. 211, 21 S. W. 947; 39 Cyc. 981–983.

The difficulty in this, as in many other instances, lies, not in ascertaining the abstract principles of law, but in applying them to the facts of the case.

[3] Where a contract is not usurious on its face, whether or not it is in fact usurious is a question for the jury, or for the court, if tried without a jury. Bomar v. Smith, supra; Slaughter v. Eller, 196 S. W. 708.

We are loath to disturb the judgment of a trial court on an issue of fact, and if such finding depended on the credibility of witnesses, or the weight to be given to their testimony, we would not do so. In the instant case there is no material conflict in the testimony of the witnesses. The judgment of the trial court is so against the overwhelming weight of the testimony that we are unwilling to let it stand; for which reason the judgment of the trial court is reversed, and this cause is remanded for another trial.

Reversed and remanded.

### On Motion for Rehearing.

On a former day of the present term of this court we reversed and remanded this cause, upon the ground that the judgment of the trial court was not supported by the evidence. After mature consideration, we have concluded that we were in error in so holding.

[4, 5] In the absence of material error in the conduct of a case, an appellate court should affirm the judgment of the trial court, if it can do so upon any theory presented by the pleadings and sustained by the evidence. The pleadings and the evidence in the instant case presented the issue that the $5,000

of stock in the Hudmon Oil Mill corporation was not given to appellees for the use of money loaned or advanced by them to appellant, but in payment for their services in finding a party or parties who would make such loan or advancement in whole or in part to appellant. The court found in favor of appellees, and, if that finding was correct, the proper judgment was entered. The finding of a court upon an issue of fact, trying a case without a jury, is entitled to the same weight as the finding of a jury.

[6] We were impressed with the idea that no sane man would pay $5,000 for services rendered in finding some one who would loan him $17,500 at 10 per cent. interest, and that the payment of this amount was really intended as interest on the loan. The written contract plainly specified that appellant agreed to give $5,000 of stock in the corporation to be organized by him, for services to be rendered by appellees in finding some person who would make him such loan, or a part thereof, and, if only a part, the remainder to be advanced by appellees. If such was the real agreement, a court will enforce the contract; no fraud, accident, or mistake being alleged or shown. Courts are not called upon to pass upon the wisdom of contracts made by parties, where the party complaining has not been overreached.

As to $5,000 being an extravagant price for appellant to pay for finding some one who would loan him $17,500, it appears from the record that he might well have considered such a loan of great value to him. His mill property had been sold, and he could redeem the same for $17,500. If he could redeem this property, he could organize a corporation for $60,000, of which $30,000 would be cash for operating expenses, and the other $30,000 was to be issued to him, presumably for the mill property, which would cost him but $17,500. Such being the facts, if he could do no better, or thought that he could not, he might well have considered it good business to pay $5,000 of his $30,000 stock to some one who would find a party who would make him the loan. At least, the trial court might have reasonably so found.

We stated in our original opinion herein that the stock was worth par. No stock was being bought or sold at that time, except that subscribed by business men of Hamilton, who, the evidence shows, took said stock in order that they might secure competition in the oil mill business at that place. The trial court might well have found that the stock at the time of the transaction here under consideration was of uncertain value.

[7] Appellees insist that they did not loan or advance to appellant any money, but secured other parties to do so. If so, the amount paid them was not "for the use or detention of money" belonging to them, and was therefore not interest, and, if not interest, it could not be usury.

The record is not clear as to the $7,500 obtained in Galveston, but the undisputed evidence shows that the $10,000 obtained from Shear was advanced or loaned by Shear as the result of the efforts of appellee Foster, and for this they were entitled to the $5,000 stock under the contract.

[8] The trial court might well have found that the contract was a subterfuge to cover usurious interest, but, having found to the contrary, we have concluded that we ought not to set such finding aside as being wholly unsupported by the evidence.

For the reasons stated, appellees' motion is granted, our former judgment herein, reversing and remanding the cause, is set aside, and the judgment of the trial court is here affirmed.

Motion granted, and judgment affirmed.

---

⬤⟦For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes