

# THE ATTORNEY GENERAL
## OF TEXAS
### AUSTIN 11, TEXAS

Gerald C. Mann
XXXXXXXXXXXX
ATTORNEY GENERAL

## NO. 3050

(Affirmed by Letter to Hon. Callan Graham, Ch. Committee on State Affairs, House of Representatives, Jan. 31, 1951)

### HOUSE BILL NO. 420 IS UNCONSTITUTIONAL

Opinion holding House Bill No. 420 (Small Loan Bill) unconstitutional because:

(1). It violates Article XVI, Section 11, by attempting to authorize interest of more than ten per cent per annum.

(2) It is a special law "fixing the rate of interest" in violation of Constitution, Article III, Section 56.

(3). It is discriminatory in violation of "Equal Protection" Clause of Federal Constitution and Texas Constitution, Article I, Section 3, Article I, Section 19, and Article III, Section 56.

---

## OFFICE OF THE ATTORNEY GENERAL

May 13, 1939

Honorable R. Emmett Morse
Speaker of the House of
 Representatives
Austin, Texas

Opinion No. O-726
Re: Constitutionality of Committee amendment to House Bill No. 420, which is a bill to regulate the business of making loans of $500.00 or less and provides that such lenders may make certain charges in addition to 10% interest.

Dear Sir:

We beg to acknowledge receipt of your request of May 1st for an opinion of this department on the constitutionality of the above mentioned bill which is now pending before the current session of the Legislature. Due to the importance of the

question and the complexity of the many legal problems involved, we have given the matter extensive and deliberate consideration. We are pleased, therefore, to submit this conference opinion which reflects the research and deliberation of the entire Attorney General's department.

The Committee amendment to House Bill No. 420 constitutes a comprehensive act to regulate the business of making small loans not exceeding $500.00. We attach hereto a copy of the bill so that the same may be referred to in conjunction with this opinion, but shall summarize the salient features of the bill as follows:

Section 1 sets out at length the purposes of the bill, which are stated to be the need for regulated credit to small and necessitous borrowers, brought about by economic conditions. The bill provides for the supervision and licensing by the Banking Commissioner of the State of all persons, corporations, etc., who engage in the business of making small loans, expressly excepting, however, banks, savings banks, Morris Plan banks, industrial banks, loan and investment companies, insurance companies, trust companies, building and loan associations, credit unions and pawnbrokers (Section 20). Licensees under the act are expressly permitted (under Section 13-A) to charge in addition to 10% per annum interest (1) an initial charge of 5% and (2) a monthly charge of 1½% of the unpaid balance of the loan, not to exceed $2.00. In the event these permissive "additional charges" should be held by a court in any particular case "not to be chargeable to the borrower", the licensed lender shall be entitled to a return of principal less 10% penalty (Section 13-B). The bill contains many regulatory provisions and provides a criminal penalty for violations (Section 19). The Bill, in Section 24 thereof, expressly repeals the Loan Brokers' Regulatory Act (Acts 1927, 40th Legislature, 1st Called Session, page 30, Chapter 17), the annual $150.00 occupation tax on Loan Brokers (Section 14 of Article 5069, 5071, 5073, Title 79, R.C.S. 1925) only in so far as they are inconsistent with this bill.

The Attorney General, in passing upon the constitutionality of proposed or enacted legislation, may not look to the policy, wisdom, or desirability of the Act, but he is concerned solely with the question of whether or not the particular Act comes within the limitations prescribed by the State and Federal Constitutions. In determining this question, he must be guided by the decisions and pronouncements of the Courts of Texas and the United States. When the Supreme Court of Texas has defined the meaning and application of a particular provision of the Constitution of Texas, it is not within the province of the Attorney General to seek to place any different construction upon it. It is his duty to follow the interpretation as defined by the Court.

Hon. R. Emmett Morse, page 3   (O-726)

The essence of House Bill 420 is the legislative sanction, contained in Section 13 thereof, permitting the lender "to contract for and receive" from the borrower, in addition to ten per cent per annum interest, certain "charges as reimbursement for all expenses incurred and payment for all services rendered in connection with the loan." May the Legislature properly permit such charges in view of Article XVI, Section 11, of the Constitution of Texas? which provides:

"All contracts for a greater rate of interest than ten per centum per annum shall be deemed usurious, and the first Legislature, after this amendment is adopted, shall provide appropriate pains and penalties to prevent the same...."

What is the definition of interest as used in this provision of the Constitution? Does it mean the net return on the loan to the lender, or does it mean the total amount paid by the borrower to the lender including incidental expenses in connection with the loan? Gaines, J, speaking for the Supreme Court of Texas in Parks v. Lubbock (1899), 92 Tex. 635, 51 S.W. 322, quoted the common law definition of interest from Abbott's Law Dictionary as being "a compensation usually reckoned by a percentage of the loan, use or forbearance of the money." Article 5069, Revised Civil Statutes of Texas, 1925, adds the word "detention" to this common law definition. It reads:

"'Interest' is the compensation allowed by law or fixed by the parties to a contract for the use or forbearance or detention of money....."

With the possible exception of the word "detention", the statutory definition is declaratory of the common law. It is self-evident that the legislature may not change the meaning and effect of the constitutional provision by altering either the statutory definition of "interest" or by amending the statutes heretofore enacted providing pains and penalties to prevent usury as directed by the Constitution.

As to whether expenses connected with a loan are included in "interest" as that word is used in Article XVI, Section 11, of the Texas Constitution, let us look to the cases. Texas courts have uniformly held that the compensation to the lender may in no event be more than 10 per cent. This prohibition may not be circumvented by subterfuge such as calling a part of the compensation a "service charge", "commission", "inspection fee" or "storage charge" if it is in fact "interest in disguise".

"If the amount paid by the borrower to the lender in excess of the legal interest was as compensation

for the use of the money loaned it is usury, whatever may be the guise under which the transaction is clothed." Hudman v. Foster (Austin Court of Civil Appeals) 210 S.W. 262.

Thus in Joy v. Provident Loan Society, 37 S.W. (2) 254 (writ of error dismissed), the Texarkana Court of Civil Appeals held that a pawn broker might not collect "storage charges" from the borrower in addition to ten per cent interest. The court said:

"The per centum added for 'storage charges' was not for services for the particular loan. Such per centum charges represented and included a prorata share of the society's continuous expenses for storage and insurance irrespective of the outlay on particular loans. In other words, it was the prorata cost of the society's overhead expenses...in nowise were such expenses so incurred intended to be charged as expenses for special services rendered to borrowers on particular loans. There was no added benefit to the particular borrower by reason of such expenses....It is difficult to understand as the evidence appears in the record, why the charge was made for 'storage and insurance' unless to get a greater compensation for the loan of the money than the regular rate of interest would give." (Emphasis ours)

In Forreston State Bank of Forreston v. Brooks (Waco Court of Civil Appeals 1932) 51 S.W. (2) 645, the court declared the loan usurious because the bank charged the borrower a ten per cent "service charge" in addition to a ten per cent interest. In that opinion the court said:

"It is apparent that the only services rendered were those necessarily required in making the ordinary loan. The interest allowed by statute is intended to compensate for such services. The evidence wholly failed to show that any such extra service was rendered as would authorize a charge therefor. The means employed in this case cannot be used to avoid the effect of the usury statute. To allow extra charges for such services would destroy the purpose of the usury laws. Independent Lumber Company v. Gulf State Bank, 299 S.W. 939; Slaughter Company v. Eller, 196 S.W. 704." (Emphasis ours)

Justice McClendon, speaking for the Austin Court of Civil Appeals in Baltimore Trust Company v. Sanders, 105 S.W. (2) 710, (writ of error dismissed) said:

"Under this state of facts it is clear that the ex-
penses, testified to by Viner as going to make up
note 2, were expenses incurred by the bond company
in the conduct of its business; that is for printing,
negotiating, etc., its own bonds and guaranteeing the
collateral securing them. They were not in any proper
sense expenses incurred or services rendered to appel-
lees by the bond company in the capacity of broker or
agent for appellees (the borrowers) or otherwise. The
bond company might as properly charge to appellees
its office rent, salaries of its officers, agents and
employees and other expenses of operating its busi-
ness."

In the case of Independent Lumber Company v. Gulf State
Bank, 299 S.W. 939, (writ of error refused), the Galveston Court
of Civil Appeals held to be usurious a series of loans on which
a bank charged the borrower eight per cent "inspection fee" for
inspecting the property by which the loans were secured. The
evidence showed that the "inspection fee" was charged in all in-
stances regardless of whether or not an inspection actually was
made. The court said:

"Admittedly it was never even contemplated that appel-
lant (the borrower) was to nor did it in fact ever get
anything except the use of the money. No quid pro quo
could therefore have gone to it for anything else......
The mere taking out in advance, by the discounting meth-
od, of the full conventional rate in Texas of 10 per
cent per annum did not constitute usury, but that malum
prohibitum lay in tacking on still another six per cent
per annum charge for no additional or different service
to the borrower, but for 'the amount of trouble to the
bank in carrying that type of loan.' Fowler v. Equitable
Trust Company, 141 U.S. 384, 12 S.Ct. 1, 35 L.Ed. 786;
Federal Mortgage Company v. Bank, 254 S.W. 1002."

In the case of Texas Farm Mortgage Company v. Rowley,
98 S.W. (2) 854, the Fort Worth Court of Civil Appeals held that
certain notes bearing 7½% interest secured by deed of trust were
usurious because the deed of trust stipulated that the borrower
should pay all taxes which might be assessed against the notes,
which contingent taxes when added to the 7½% interest of the
notes might total more than 10% which would amount to usury. It
is to be noted that these taxes were clearly "expenses incurred
in connection with the loan" as contemplated by Section 13-A of
House Bill 420. Yet the Court of Civil Appeals considered them
to be within the meaning of "interest" if chargeable to the bor-
rower. We quote from that opinion:

"And the provision in the mortgage, to the effect
that the borrower would pay any taxes that might
be assessed against the note while the holder is
a resident of another county, manifestly was in-
tended to provide for payment of taxes on the
n ote in the event it should have a taxable situs
in that county by reason of establishing an of-
fice or agency in that county for transaction of
any of its business.  The stipulation could not
have been employed with any other contingency in
view; and therefore it manifests an intention
to charge more than 10 per cent interest for the
use of the money borrowed, in the event of the
happening of that contingency and if the taxes
on the note, plus interest thereon, should ex-
ceed 10 per cent per annum."  (Emphasis ours)

A writ of error was granted in this case by the Texas
Supreme Court, and in an opinion by Commissioner German of the
Commission of Appeals, adopted by the Supreme Court on May 10,
1939, (not yet reported) styled Travelers Insurance Company et
al v. Elizabeth Rowley et al, the above quoted part of the opinion
of the Fort Worth Court was expressly approved. though the case
was reversed on the ground that payments on the notes had been im-
properly credited. We quote from this opinion by the Commission
of Appeals.

"The Court of Civil Appeals held the loan transac-
cion usurious because of certain provision in the
original deed of trust pertaining to payment of
taxes on the notes representing the loan.  We have
reached the conclusion that this holding of the
Court of Civil Appeals must be affirmed...."

In answer to the contention that the note might never
be subjected to taxes, the Commission of Appeal's opinion stated:

"However, in our opinion the question has been
foreclosed by the Supreme Court in the recent case
of Kansas City Life Insurance Company v. Duvall,
104 S.W. (2) 11, and that case controls this one....
It was held that such provision in the contract cre-
ated a contingency which made the loan usurious from
its beginning.....The record shows that it was proven
that for the year 1933 the rates for State, County,
school and road purposes in Denton County, where the
land was situated, were such that upon the face value
of the note the taxes would have amounted to such sum
that when added to the interest provided for in the

loan the interest rate would have exceeded 10 per cent.  We think the decision above mentioned has again decided the question thus urged.  It was there held that because of the tax provision in the contract, if the contingency arose in the future by which the tax which might be paid would cause the rate to exceed 10 per cent, then the contract was 'potentially usurious' from the beginning."

The foregoing cases clearly illustrate the well-established rule in Texas, that when it appears that any charges made against a borrower in addition to the maximum rate of interest of 10 per cent per annum, whether they be called "expenses","service charges", "inspection fees", "storage charges" or "taxes", are in fact additional compensation to the lender, and as such "interest in disguise", it then follows as a matter of law that the loan is usurious.  We are, therefore, forced to the conclusion that the courts of Texas have defined "interest" so as to include all compensation paid to the lender for the use of money, though a part thereof may represent "reimbursement for expenses incurred in connection with the loan."  Applying this definition of "interest" to the "charges" expressly permitted to be made by lenders under Section 13-A of House Bill 420, we are unable to excape the conclusion that these "charges" are presumptively additional "interest"within the meaning of Article XVI, Section 11, of the Constitution of Texas.

We are not unaware of the cases holding that a borrower may be properly charged with out-of-pocket expenses arising in connection with a loan which are paid to a third party.  Thus provisions in notes providing that the maker pay 10% attorney's fees in the event the note be placed in the hands of an attorney for collection have been upheld.  Stanford v. United States Investment Corporation, 272 S.W. 568; Miner v. Paris Exchange Bank, 53 Tex. 561.  "A commission paid to the agent or broker of a borrower for services rendered in respect of the transaction, will not render a loan usurious."  42 Texas Jurisprudence 934; Williams v. Bryan, 68 Tex. 593, 5 S.W. 401.  Nor do the courts consider commissions paid to agents of the lender to be in the nature of additional interest, where the agent is the "special" as distinguished from the "general" agent of the lender.  This rule is well stated by Judge Smith of the San Antonio Court of Civil Appeals in Hughes v. Security Building and Loan Association, 62 S.W.(2) 219:

"The act of an agent, having only special and limited authority, in charging the borrower a fee by way of a commission for making a loan, or for examining title to property to be mortgaged to secure the amount of

the loan is not the act of his principal, and the fee so charged does not render the loan usurious. Jones on Mortgages, 642.

"The rule would be different, so as to charge the lender, if the agent were a general agent, with authority to make loans for the lender in such sums or at such times as he pleases. Jones, 642-a. In this case the agent had no such authority. His authority extended no further than that of receiving and forwarding applications for loans, delivering moneys actually lent, and collecting and remitting installment payments from the borrower. He had no authority whatever to make loans, to pass upon risks, or appraise securities for appellee."

See also: N oel v. Panhandle Building and Loan Association, 85 S.W. (2) 733 (writ of error refused). Sales v. Mercantile National Bank, 89 S.W. (2) 247 (writ of error dismissed). The same rule with respect to general agents would apply to servants or employees of the lender. Baltimore Trust Company v. Sanders, 105 S.W. (2) 710 (writ of error dismissed). Cost of preparation and examination of abstracts may be charged to the borrower.

In all of these cases where the courts sanctioned payments by the borrower for expenses in connection with the loan, it is to be noted that in every instance the payments were not made to the lender, but to third parties. We believe this fact clearly distinguishes these cases from the situation contemplated by Section 13-A of this Bill. We have been unable to find a single Texas case which permits the lender to collect from the borrower, in addition to interest in excess of 10%, for expenses incurred or services rendered by him in connection with the loan. See Trinity Fire Insurance Company v. Kerrville Hotel Company (Texas Supreme Court) 103 S.W. (2) 121.

Doubtless it may be argued that the lender could render services to the borrower in connection with the loan, which services are not of the type ordinarily incidental to a loan and which could be rendered by the lender more economically than the same service could be rendered by a third party. It may be further argued that compensation for such service is not to be construed as interest if the lender can render an accurate accounting showing that such services represent out-of-pocket expense which can be isolated as chargeable to the particular loan and distinguishable from the lender's general overhead expense or expenses, which are incidental to the lender's general business.

The decisions of our various appellate courts negative this argument but if they did not, we think the bill attempts to

Hon. R. Emmett Morse, page 9   (O-726)

authorize interest of more than ten per cent in another respect.
Section 13(A)(b) attempts to authorize the borrower to contract at
the time of the making of the loan to pay not to exceed 1½ per
cent per month of the monthly balance as a service charge, presum-
ably to compensate the lender for the cost of collecting the
amount of the note.  It is important to note that the borrower's
obligation to pay for such potential services, which have not been
rendered at the time of the creation of the obligation to pay there-
for, is unconditional and is not dependent upon the lender actually
rendering such services thereafter.  The act would authorize the
borrower to obligate himself to pay an amount certain whether such
services may be rendered or not.  Since the validity of the con-
tract must be tested as of the date of its execution, the fact
that such services are thereafter actually rendered by the lender
does not remove the vice that the borrower unconditionally con-
tracts to pay an additional sum for such services regardless of
whether or not they may be rendered.  It cannot be questioned
that the borrower's obligation to pay for services that are never
rendered is properly construed as interest.  By the same logic
the borrower's unconditional promise to pay for future services
which may or may not be rendered by the lender, must also be
construed as interest.  Since the bill attempts to authorize such
unconditional obligation in addition to interest of 10 per cent
per annum, it is clearly contrary to the constitutional prohibi-
tion against usury.

Likewise clearly distinguishable are those cases wherein
the lender is paid by the borrower for property or services not
connected with the customary creditor-debtor relationship.

"Without violating the usury law charges may be made for
legitimate benefits to a borrower, received by him either from
third persons who did not share them with the lender or from the
lender himself for some distinctly separate and additional con-
sideration other than the simple loan of money" - 42 Texas Juris-
prudence 931, 40.  Thus a man may properly charge for his services
in buying building materials, although he may be lending the money
to buy them with.  Orr v. McDaniel, 5 S.W. (2) 175, 30 S.W.(2)
487, affirmed by Com. of App. 33 S.W. (2) 427.

In Slaughter v. Eller (Amarillo Court of Civil Appeals,
writ of error refused) 196 S.W. 704, the court held that the
lender might receive compensation for his labor in supervising the
conduct of the borrower's business.  The court said:

"The contract in this case provided the means by which
Slaughter might keep informed of the condition of
Eller's business and prevent a use of funds other than
in the business which Slaughter was financing.  The

attention to the details by which this was to be ac-
complished necessarily imposed some labor.  The bor-
rower might legitimately agree to compensate the
lender for services of such charac ter, although per-
formed in the interest of the lender, provided al-
ways that such charges are not made a mask behind
which to conceal the true purpose of the parties."

The court said further:

"It is also stated generally that any advantage or
benefit exacted which, added to the interest reserved,
increases the compensation received for the loan to
an amount in excess of the lawful interest constitutes
usury....."

In the same category may be placed the cases relating to
building and loan associations wherein the courts have recognized
the dual capacity of a man as borrower and stockholder.  Conti-
nental Savings and Building Association v. Wood (Eastland Court of
Civil Appeals) 33 S.W.(2) 770, affirmed by Comm.App. 56 S.W.(2)
641.

Turning now from the question of what is and what is
not "interest" as defined by the courts of this state, let us con-
sider the more general question:. to what extent does the usury
provision of the Texas Constitution circumscribe the authority of
the Legislature to exercise its discretion with reference to
regulating the business of making loans?  May the Legislature ig-
nore the constitutional mandate to "provide appropriate pains and
penalties to prevent" usury as to a specific class of lenders in
the furtherance of what it deems to be the public welfare?

This question was squarely before the Supreme Court of
Texas in Watson v. Aiken, 55 Tex. 536, wherein it considered an
usurious loan made after the adoption of the Constitution of 1876
but prior to the enactment by the Legislature of any statute pro-
viding "pains and penalties" for usury.  Chief Justice Gould in
that opinion said:

"On May 27, 1876, Watson borrowed of Aiken $3,000 agree-
ing to pay interest at the rate of eighteen per cent
per annum.  The constitution which took effect in April
of that year provided that in the absence of contract
the rate of interest should not exceed eight per cent
per annum, and authorized parties to contract to "agree
upon any rate not to exceed twelve per cent per annum.'
It then proceeds thus:  'All interest charged above
this last named rate shall be deemed usurious, and the
Legislature shall at its first session provide appro-
priate pains and penalties to prevent and punish usury.'

Article 16, Section 11. . . .

"In our opinion Aiken occupies no more favorable
position than if his loan had been made after the
act of the Legislature took effect. <u>When his loan
was made, usury was illegal by virtue of the con-
stitutional prohibition; and although it was left
to the Legislature to 'prescribe pains and penalties
to prevent and punish usury', a contract for usur-
ious interest was a contract in violation of law.</u>"
(Emphasis ours)

Equally persuasive of the proper construction of such
a constitutional prohibition is the more recent case by the Texas
Supreme Court, City of Wink v. Griffith Amusement Company, 100
S.W. (2) 695, wherein the court was required to construe Article
III, Section 47, of the State Constitution which provides that
"the Legislature shall pass laws prohibiting the establishment
of lotteries and gift enterprises in this state, as well as the
sale of tickets in lotteries, gift enterprises or other evasions
involving the lottery principle, established or existing in other
states."  Chief Justice Cureton found that "lotteries <u>only</u> have
been prohibited by the Penal Code in accordance with the consti-
tutional mandate.  'Gift enterprises" and 'other evasions involv-
ing the lottery principle' nevertheless remain and stand con-
demned by the Constitution of the state as being against public
policy....Defendant in Error's 'Bank Night' plan was obviously
an evasion of the lottery laws by the avoidance of a direct charge
for prize chances....but nevertheless.....manifestly an attempted
'avoidance' of the lottery statute 'by artifice' in accordance
with the generally accepted definition of 'evasion'.  Therefore
defendant in error's 'Bank Night' plan <u>stands condemned by the
Constitution of Texas.</u>  Being condemned by the Constitution, it
is against the 'public policy of the State'".  (Emphasis ours)

Chief Justice Cureton was there speaking of a constitu-
tional provision which directed the legislature to pass remedial
legislation, as does the usury provision; the Legislature had
there failed to provide a remedy for a part of the evil recited
by the Constitution, and yet the Chief Justice declared that the
defendant's act "stands condemned by the Constitution of Texas."
Applying this reasoning to our question, it follows that the
usury provision of the Constitution permits of no discretion by
the Legislature to withhold as to any class the "pains and penal-
ties" for usury which the Constitution prescribes.

In view of the above two clear pronouncements by the
Supreme Court of Texas, we feel it unnecessary to burden this
opinion with additional citation of authorities.  Our conclusions
as to the limitations placed upon the Legislature with reference

to loans, which, under the definition of "interest" announced by the courts, are in fact usurious, could not be better expressed than in the language of Judge Lattimore, speaking for the Texas Court of Criminal Appeals in Juhan v. State, 216 S.W. 873:

> "We are not permitted to concern ourselves with the question as to whether the loan broker is necessary and useful in a community, to meet the wants of those who lack ability to measure up to the financial standing required by the bankers, nor as to whether the loan shark is an evil that should be effectively banished from our midst. Evils must be met and abolished, or minimized, according to the wisdom of our Legislature, <u>but within the limits fixed by our Constitution</u>." (Emphasis ours)

We, therefore, respectfully advise you that it is the opinion of this department that the Committee amendment to House Bill 420 exceeds the limitations of Article XVI, Section 11, of the Constitution of Texas, in that Section 13-A thereof purports to put the cloak of legislative sanction about a special class of loans which may be usurious as a matter of law.

We also believe that this bill is unconstitutional for several additional reasons. We shall mention these briefly without attempting to discuss each one exhaustively.

Section 13-C of the bill seeks to give to all charges permitted by Section 13-A a presumption of validity. This, we believe is contrary to the spirit of the constitutional inhibition against usury. As said by the Texas Supreme Court in Hemphill v. Watson, 60 Tex. 679:

> "The section of the Constitution above alluded to (Article 16, Section 11, of Constitution of 1876) made usury a <u>quasi</u> offense, which the Legislature was charged with suppressing and punishing. It even defined what should amount to the offense of usury, declaring such offense to consist in charging interest at a greater rate than twelve per cent per annum. This provision is prohibitory in its nature and self-executing so far as to render all contracts of the kind denounced immediately illegal; and it left to the Legislature the only remaining duty of saying what penalties should be imposed upon offenders against this clause of the Constitution. Cooley on Constitutional Limitations, 100 note; Law v. People, 87 Ill. 385.
>
> "'<u>A constitutional provision denying the legislature power to pass laws of a certain character is prohibitory</u>

of such acts as those laws would authorize.'"

We believe Section 13-C of this bill is discriminatory as to certain features thereof and therefore violates the "equal protection" clause of the United States Constitution and the following provisions of the Constitution of Texas:

Article III, Section 56. "The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing..... fixing the rate of interest."

Article I, Section 3. "All free men, when they form a social compact, have equal rights, and no man, or set of men, is entitled to exclusive separate public emoluments, or privileges, but in consideration of public services."

Article I, Section 19. "No citizen of this State shall be drprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land."

Section 13 C provides that if a loan made by a licensed lender in accordance with the rate provisions of Section 13-A be found by a court to be usurious, such lender will be penalized only to the extent of 10% of the principal amount of the loan; whereas if a non-licensed lender (and he may be in the exempted categories and therefore ineligible for a license) should make the identical loan, he is subject to the penalty of double the amount of usurious interest paid, under Article 5073 of the Revised Civil Statutes.

The last paragraph of Section 3 of the bill requires every licensee to appoint the Banking Commissioner his attorney for process of service. No provision is made in the bill requiring the Banking Commissioner to give notice of any service of process to the defendant. Such provisions were held to invalidate the Loan Brokers statute of 1918. (Acts 34th Leg. 1915, C 28, Vernon's Annotated Civil Statutes, Supplement 1918, Articles 6171-a-6171-1) as per the opinion of Lattimore, J in Juhan v. State (Tex.Ct. of Crim.App., 1919) 216 S.W.(2) 873 at page 877:

"....and then to further write in section 7 of said act (article 6171g), as a part of 'the law governing such business', that such private citizen shall file with the county clerk of each county where he does business a written, irrevocable power of attorney, naming the county judge of such county as his duly

authorized agent and attorney in fact, for the pur-
pose of accepting service for him or it, or being
served with citation in any suit brought against him
or it, in any court of this state, 'and consenting
that the service of any civil process upon such
county judge as his or its attorney for such purpose,
in any suit or proceeding, shall be taken and held
to be valid, waiving all claim and right to object
to such service or to any error by reason of such
service,' is to attempt to place such obligation in
said bond as to make it unreasonable and discrimina-
tory. No citizen of this state can be compelled to
relinquish or waive his right to his day in court as
a condition to engaging in any lawful business. Nor
will a law requiring a bond seeking to impose such
condition be upheld by us. We are not surprised
that the bonding companies and solvent citizens, as
is disclosed by this record, refused to make for
appellant the bond required by this act. Under its
conditions, and the terms of this law, the county
judge might accept service, or be served with cita-
tion, in a suit against appellant in the most remote
county in the state, and in a lawsuit wholly foreign
to the loan brokerage business, and in such case,
even without knowledge on the part of appellant of
said suit or service, or accepted service, a judg-
ment might be rendered against him and his bondsmen
for any amount; and, even though the service be de-
fective, erroneous, and illegal, appellant and his
sureties would be powerless, for by the express
provisions of the law such written appointment of
the county judge as his attorney in fact must con-
tain appellant's consent to such service, and his
waiver of any right to object to any error therein.
Notwithstanding the fact that, as to the ordinary
citizen, erroneous and defective service renders the
judgment either void or voidable, as the case may
appear, for some reason effort is here made to take
from the man engaged in the business of loan broker
such right, and he is thus penalized and denied the
right of equal protection of the law, and deprived
of his property and privileges without due course
of law. There is no provision in this law requiring
the county judge to notify, or in any other way ac-
quaint, the loan broker with the fact that he has
accepted service or been served with citation in any
suit against him, which facts may result from the
consideration that it would do the loan broker no
good, inasmuch as he could not take any steps to re-
lease himself by reason of any defect in the cita-
tion....."

See also Hess v. Pawloski, 274 U.S. 352, 47 Sup.Ct. 632, 71 L.Ed. 1091, wherein the Massachusetts statute providing for substituted service on non-resident motorists was upheld because "it is required that he shall actually receive and receipt for notice of the service and a copy of the process." We, therefore, believe this provision of Section 3 of the bill is a denial of due process.

The committee amendment to House Bill No. 420 being unconstitutional for the various reasons above enumerated, we shall pretermit any more detailed consideration of its specific provisions.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By /s/ Walter R. Koch
Walter R. Koch, Assistant

/s/ Victor W. Bouldin
Victor W. Bouldin, Assistant

WRK:FL/wb

This opinion has been considered in conference, approved, and ordered recorded.

/s/ Gerald C. Mann
GERALD C. MANN
ATTORNEY GENERAL OF TEXAS

APPROVED: OPINION COMMITTEE
BY:      GRL, CHAIRMAN