

# THE ATTORNEY GENERAL

## OF TEXAS

AUSTIN 11, TEXAS

GERALD C. MANN
XXXXXXXXXXXXXXXXX
ATTORNEY GENERAL

Honorable B. J. Leyendecker, Chairman
Committee on Banks and Banking
House of Representatives
Austin, Texas

Dear Sir:          Opinion No. 0-3206
                   Re:  The constitutionality of House Bill
                        No. 6 and of House Bill No. 174.

        You have requested, as Chairman of the Committee
on Banks and Banking, the opinion of this department upon
the constitutionality of House Bill No. 6 and House Bill No.
174, each of which is pending before the Forty-seventh Leg-
islature, and each of which is designed to regulate the
business of making personal loans in the sum of Five Hundred
Dollars or less.

        House Bill No. 174 is identical with House Bill
No. 420 of the Forty-sixth Legislature in respect to provi-
sions which this department, under date of May 13, 1939, in
opinion No. 0-726, held were violative of Article XVI, Sec-
tion 11, Article III, Section 56, and Article I, Sections
3 and 19, of the Constitution of Texas.

        House Bill No. 6 does not embody the various un-
constitutional features of House Bill No. 174 or of House
Bill No. 420 of the Forty-sixth Legislature, in respect to
Section 56 of Article III, and Sections 3 and 19 of Article
I, of the Texas Constitution.  Its provisions also differ
from the provisions of the other bills in relation to Sec-
tion 11 of Article XVI of the Constitution which reads:

        "All contracts for a greater rate of inter-
    est than ten per centum (10%) per annum shall be
    deemed usurious, and the first Legislature, after
    this amendment is adopted, shall provide appro-
    priate means and penalties to prevent the same * *"

        The vice appearing in House Bill No. 174, and in
House Bill No. 420 of the Forty-sixth Legislature, exists by
virtue of the provisions of the proposed bills, pertaining
to personal loans, which would authorize the payment to the
lender by the borrower of sums of money for expenses incur-
red, or services rendered, in addition to the maximum rate

of interest, irrespective of whether such expenses were in-
curred or such services rendered by the borrower, and whether
such charges would constitute interest as a matter of law.

House Bill No. 6, however, is designed to authorize
the payment of expenses incurred or services rendered only
if the expenses are actually incurred and the services actu-
ally rendered in connection with each particular loan, and
when such charges would not constitute interest as a matter
of law.

The constitutional question presented, in respect
to House Bill No. 6, is whether the bill authorizes the col-
lection of sums of money in addition to the maximum interest
rate, which sums of money actually constitute "interest",
whereby the bill would be unconstitutional as authorizing
usurious contracts.

It is well settled in Texas that charges made for
expenses or services which are not actually incurred or ren-
dered in relation to the particular loan and for the benefit
of the particular borrower constitute interest. Clearly any
contract providing for the collection of such additional sums,
in addition to the maximum rate of interest, under the guise
of expenses incurred or services rendered, would be usurious
and invalid. Likewise, any legislative enactment which au-
thorizes such collections must fall. See our opinion No.
0-726.

The courts of Texas have never held directly that
charges made for expenses actually incurred or services
actually rendered, when paid to the lender, rather than to
a third party, would, or would not, constitute interest as
a matter of law.

The question thus posed seems to have been reserved.
This is demonstrated by the following excerpts from opinions
in certain cases.

Joy v. Provident Loan Society, 37 S. W. (2d) 254,
(writ of error dismissed):

"In other words, it was the pro rata cost
of the society's overhead expenses * * * *

"In nowise were such expenses so incurred
intended to be charged as expenses for special
services rendered to borrowers on particular loans.
There was no added benefit to the particular bor-
rower by reason of such expenses. * * * *"

Forreston State Bank of Forreston v. Brooks, 51 S. W. (2d) 645:

"It is apparent that the only services rendered were those necessarily required in making the ordinary loan. The interest allowed by statute is intended to compensate for such services. The evidence wholly failed to show that any such extra service was rendered as would authorize a charge therefor. The means employed in this case cannot be used to avoid the effect of the usury statute. To allow extra charges for such services would destroy the purpose of the usury laws. * * *"

Baltimore Trust Company v. Sanders, 105 S.W. (2d) 710 (writ of error dismissed):

"Under this state of facts it is clear that the expenses, testified to by Viner as going to make up note 2, were expenses incurred by the bond company in the conduct of its own business; that is for printing, negotiating, etc., its own bonds and guaranteeing the collateral securing them. They were not in any proper sense expenses incurred or services rendered to appellees by the bond company in the capacity of broker or agent for appellees (the borrowers) or otherwise. * * *"

Independent Lumber Company v. Gulf State Bank, 299 S.W. 939 (writ of error refused):

"Admittedly it was never even contemplated that appellant (the borrower) was to, nor did it in fact ever, get anything except the use of the money. No quid pro quo could therefore have gone to it for anything else * * *

"The mere taking out in advance, by the discounting method, of the full conventional rate in Texas of ten per cent per annum, on short-term loans like these, did not constitute usury, but that malum prohibitum lay in tacking on still another per cent per annum charge for no additional or different service to the borrower, but for 'the amount of trouble' to the bank in carrying that type of loan. * * *"

It is the settled law in Texas that a borrower may be properly charged with expenses arising in connection with a loan which are paid to the lender's special agent or to third parties. The Supreme Court of Texas, speaking through

Mr. Justice Critz, declared in Nevels, et al v. Harris, 129 Tex. 190, 102 S. W. (2d) 1046, 109 A. L. R. 4264:

> "In this connection we hold that it is the law of this State that bona fide fees, such as these, paid to the lender's special agents, are not to be considered as interest under our usury laws where such agents have only limited or special authority, and the lender does not participate in the funds so paid. Sales v. Mercantile National Bank at Dallas, (Tex. Civ. App.) 89 S. W. (2d) 247; Noel v. Panhandle Building & Loan Association, (Tex. Civ. App.) 85 S. W. 773; Hughes v. Security Building & Loan Association (Tex. Civ. App.) 62 S. W. (2d) 219."

The courts of Texas have not passed upon the question of whether, paraphrasing the foregoing language of Mr. Justice Critz, bona fide fees paid to the lender will be considered as interest under our usury laws. That a borrower may compensate the lender for certain services rendered in connection with a loan is clearly implied, however, in the cases. In Slaughter Co. v. Eller, 196 S. W. 704, it was said:

> "The borrower might legitimately agree to compensate the lender for services of such character, although performed in the interest of the lender * * * provided always that such charges are not made a mask behind which to conceal the true purpose of the parties. We think the contract in this case is not necessarily usurious, but whether it is or not would be dependent upon the intention of the parties, to be ascertained in accordance with the principles announced in the foregoing authorities."

In Hugman v. Foster, 210 S.W. 262, (Reversed on other grounds, 231 S.W. 346) it was declared:

> "The law as applicable to the facts of this case may be briefly stated as follows:

> "If the amount paid by the borrower to the lender in excess of the legal interest was as compensation for the use of the money loaned, it is usury, whatever may be the guise under which the transaction is clothed. In such case 'the court should penetrate beneath the lawful appearance, and reach the unlawful transaction.' Lawrence v. Griffen, 30 Tex. 401.

> "'It is quite immaterial in what manner or form, or under what pretense it is cloaked, if the intention was to reserve a greater rate of interest than the law allows for the use of money, it will vitiate the contract with the taint of usury. ' Mitchell v. Napier, 22 Tex. 129; building & Loan Ass'n v. Robinson, 78 Tex. 169, 14 S. W. 227, 9 L. R. A. 292, 22 Am. St. Rep. 36.

> "On the other hand, a bona fide charge by the lender in connection with the loan will not render it usurious. Bomar v. Smith, 195 S. W. 965; Huddleston v. Kempner, 1 Tex. Civ. App. 211, 21 S. W. 947; 39 Cyc. 981-983.

> " The difficulty in this, as in many other instances, lies, not in ascertaining the abstract principles of law, but in applying them to the facts of the case."

The case of Independent Lumber Co. v. Gulf State Bank, supra, involved a contract under which 16 per cent was collected by the bank as lender, 8 per cent being chargeable as interest and 8 per cent chargeable for inspection charges. The court said:

> "Had the contract required the inspections, and the eight per cent (8%) on that account been only chargeable where they were actually made, as well as shown to be a reasonable compensation for the service, the majority of this court are unwilling to hold that, so far, it would have been usurious * * * The authority cited by the appellee as upholding a contrary doctrine are thought to be distinguishable, in that, in most, if not all instances, they involve legitimate benefits to the borrower, either by third persons not sharing them with the lender, or from the lender direct for some distinctly separate and additional consideration than the simple loaning of the money."

Doubtless there are charges which a borrower could pay to a lender, incident to a loan, which would not constitute interest for the use of money. We construe House Bill No. 6 to authorize the payment by the borrower to the lender of such charges. If the charges made for the expenses incurred, or for services rendered, by the lender, do not, in individual cases, constitute legitimate charges but interest for the use and detention of money, the charges would, of

course fall. The theory of House Bill No. 6 is that in such cases the charges will not be made, or, if made, will not have been pursuant to any authority given by the bill.

Passing upon the constitutionality of a proposed legislative bill, as we are doing in this opinion, as to whether it authorizes usurious interest, presents and entirely different matter from passing upon an individual contract entered into pursuant to the purported authority of the bill as to whether it, in fact, is usurious.

The possibility that the privileges granted by House Bill No. 6 will be abused affords no basis for this department to hold the Act itself to be unconstitutional.

It has been pointed out that the courts of Texas have not passed upon either a legislative enactment embodying the provisions of House Bill No. 6, or directly upon the fundamental questions presented in a judicial review of such legislation. It is significant to observe, however, that the Supreme Court of Tennessee has upheld similar legislation in that State. In Koen v. State, 39 S. W. (2d) 283, the constitutionality of the small loan act of Tennessee was challenged. The principles invoked by the court in holding the Act constitutional appear in the following excerpts from the court's opinion:

"Nor does the act violate article 11 () 7, of the Constitution, requiring the Legislature to fix an equal and uniform rate of interest. It fixes the uniform rate at 6 per cent, per annum, and limits the maximum service fees that the lender may impose for investigating the moral and financial standing of the applicant and the nature and value of the assurance for repayment of the loan and other necessary expenses and losses for closing the loan to a maximum charge of 3 per cent, per month. By thus prescribing the maximum expense fee, the Legislature did not intend to fix it as a definite charge in addition to the interest. Recognizing the right of a lender to charge a reasonable fee for services to the borrower (Mallory v. Columbia Mortgage & Trust Co., 150 Tenn. 219, 263 S. W. 68), the Legislature fixed this maximum to prevent abuses of the system, and declared in the last paragraph of section 17 of the act that --

"'No loan for which a greater rate of interest, fee or charge than is allowed by this Act, has been contracted for or received whereever

made shall be enforceable in this State and any
person who in any wise participates therein
shall be subject to the provisions of this Act.'

"'The weight of authority is clearly to
the effect that payment by the borrower of reason-
able expenses incident to the loan, and of reason-
able compensation for trouble and services in-
volved in, or necessitated by, it, when paid and
received in good faith, for such purposes only,
and not as consideration for the loan, do not con-
stitute usury, even though they make the cost of
the transaction to the borrower exceed the max-
imum legal interest.

"'This is on the theory, as stated in Lassman
v. Jacobson (1914) 125 Minn. 218, 51 L. R. A.
(N. S.) 465, 146 N. W. 350, Ann. Cas. 1915C, 774,
that "expenses incident to making the loan and
furnishing the lender satisfactory security for its
repayment can in no sense be considered compensa-
tion for the use of the money loaned."'  Note III,
21 A. L. R. page 819.

"The Legislature could not authorize the
lender to arbitrarily fix a monthly expense fee
of 3 per cent, in addition to the annual inter-
est on loans and did not intend to do so.  As
stated, the object was to fix a maximum service
charge beyond which the lender could not go with-
out making a conclusive case against him result-
ing in the forfeiture to the borrower of the
entire loan, together with the charges thereon.
It left the loan company and the borrower free
to agree upon a reasonable service charge which
in no event could exceed the maximum of 3 per
cent per month.  The act is susceptible to that
construction.  If a doubt existed, it must be
resolved in favor of the act, because the courts
cannot properly adjudge an act invalid unless
the violation of the Constitution is, in their
judgment, clear, complete, and unmistakable.
* * * "

Certain of the premises in support of the conclusion
reached by the Supreme Court of Tennessee in the above case
have not been settled as law, or not as law, in Texas.  Not-
withstanding which, it is our opinion, under the cases in
Texas, that House Bill No. 6 is not clearly unconstitutional,
and that, therefore, this department should resolve all doubts

in favor of its constitutionality.

We have pretermitted any discussion of specific provisions of House Bill No. 6. We do, however, wish to call specific attention to the following provision appearing in Section 18 of the Bill, which reads:

"Furthermore, such charges shall be presumed in any suit in any court in this State to be prima facie reasonable and proper, and such charges shall not be considered to be interest or compensation for the use, forbearance or detention of money."

If the foregoing provision of House Bill No. 6 is construed to mean that the charges authorized by Section 17 of the Act for expenses incurred and services rendered shall be authorized notwithstanding whether they are actually incurred or rendered, this provision would be invalid for the same reason that House Bill No. 420 of the Forty-sixth Legislature and House Bill No. 174 of this Legislature are invalid. As pointed out before, the vice in House Bill No. 420 and in House Bill No. 174 rests in the fact that the Bill authorizes the collection of charges in excess of the lawful rate of interest irrespective of whether such charges are for expenses actually incurred or services actually rendered. It is not, in our opinion, within the power of the Legislature, under the Constitution, to do this. Probably the provision quoted from Section 18 is severable and the remainder of the Act would be protected under the saving clause; nevertheless, we feel impelled to call your attention to the probable invalidity of this particular provision of the Bill.

It is the opinion of this department that House Bill No. 174 of the present Legislature is unconstitutional for the reasons set out in our opinion No. O-726 relating to House Bill No. 420 of the Forty-sixth Legislature.

Resolving all doubts in favor of the Act, it is the opinion of this department that House Bill No. 6 is constitutional.

Yours very truly

ATTORNEY GENERAL OF TEXAS


By s/Walter R. Koch
    Walter R. Koch
            Assistant

By s/Zollie C. Steakley
    Zollie C. Steakley
            Assistant

ZCS:LM:wc


APPROVED MARCH 29, 1941
s/Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

Approved Opinion Committee By s/BWB Chairman